ORIGINAL

20 MAG 2035

Approved: _____
MATTHEW J.C. HELLMAN
Assistant United States Attorney

Before:  HONORABLE BARBARA C. MOSES
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - - - -X
                                        :  **SEALED COMPLAINT**
UNITED STATES OF AMERICA                :
                                        :  Violations of 18 U.S.C.
            - v. -                      :  § 875(c), 1546(b)(2),
                                        :  1028A, and 2.
ALLAMBERGEN KUDAYBERGENOV,              :
   a/k/a "Allambergen Kuday Bergenov,"  :  COUNTY OF OFFENSE:
                                        :  NEW YORK
                  Defendant.            :
- - - - - - - - - - - - - - - - - - - -X

SOUTHERN DISTRICT OF NEW YORK, ss.:

JOHNATHAN WALTER, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE

### (Threatening Interstate Communications)

1. From at least in or about May 2019, up to and including February 2020, in the Southern District of New York and elsewhere, ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant, knowingly transmitted in interstate and foreign commerce communications containing threats to injure the person of another, to wit, KUDAYBERGENOV sent threatening messages to a business (the "Victim Business") in which he threatened to kill employees of the Victim Business.

(Title 18, United States Code, Section 875(c).)

### COUNT TWO

### (Use of False Immigration Identification Documents)

2. On or about at least April 11, 2019, in the Southern District of New York and elsewhere, ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant, for the purpose of satisfying a requirement of the employment verification system set forth in subsection 1324a(b) of Title 8 of the United States Code, used false identification documents, to wit, a Permanent Resident Card and a Social Security Card, knowing and having reason to know that the documents were false, to wit, KUDAYBERGENOV, who has never had Permanent Resident status, submitted a Permanent Resident Card with an Alien Registration Number which is not his own, and a Social Security Card with a Social Security Number which is not his own, in support of an application which is a requirement of the employment verification system.

(Title 18, United States Code, Sections 1546(b)(2) and 2.)

## COUNT THREE

### (Aggravated Identity Theft)

3. On or about at least April 11, 2019, in the Southern District of New York and elsewhere, ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028(c), to wit, KUDAYBERGENOV possessed, used, and transferred the Alien Registration Number and Social Security Number of another individual for the purpose of satisfying a requirement of the employment verification system set forth in subsection 1324a(b) of Title 8 of the United States Code, in violation of Title 18, United States Code, Section 1546(b)(2), as charged in Count Two of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Agent with the FBI, and I have been involved in the investigation of ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement officers, witnesses, and others, as well as my examination of reports, and records. Because this affidavit is

being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## THE INVESTIGATION

5. Based on my participation in this investigation, and as set forth in greater detail below, I have learned that in or about April 2019, ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant, submitted fraudulent documentation to obtain employment at a restaurant in New York, New York (the "Victim Business"). Beginning approximately one month later, since in or about May 2019, KUDAYBERGENOV sent over the Internet dozens of communications to his former employer, including e-mails containing derogatory racial commentary, references to race-based violence and sexual assault, and threats to kill various employees of the Victim Business.

### *The Employment Application*

6. On or about April 10, 2019, ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant, was hired to work at the Victim Business. Based on my training, experience, and investigation in this case, I have learned, among other things, the following regarding the process by which KUDAYBERGENOV was hired:

   a. Title 8, United States Code, Section 1324a(b) requires businesses to use an employment verification system before hiring new employees. This system requires an employer to provide attestation that it verified a prospective employee is not an unauthorized alien by using a form designated by the Attorney General or established by regulation, and that form is a United States Citizenship and Immigration Services Employee Eligibility Verification Form I-9. A prospective employee must submit documentation to establish both employment authorization and identity with the form I-9.

   b. On or about April 11, 2019, as part of the hiring process at the Victim Business, KUDAYBERGENOV, the defendant, completed an I-9 (the "I-9"). The I-9 contains, among other things, the following:

being submitted for the limited purpose of establishing probable cause, it does not include all of the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

## THE INVESTIGATION

5. Based on my participation in this investigation, and as set forth in greater detail below, I have learned that in or about April 2019, ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant, submitted fraudulent documentation to obtain employment at a restaurant in New York, New York (the "Victim Business"). Beginning approximately one month later, since in or about May 2019, KUDAYBERGENOV sent over the Internet dozens of communications to his former employer, including e-mails containing derogatory racial commentary, references to race-based violence and sexual assault, and threats to kill various employees of the Victim Business.

### *The Employment Application*

6. On or about April 10, 2019, ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant, was hired to work at the Victim Business. Based on my training, experience, and investigation in this case, I have learned, among other things, the following regarding the process by which KUDAYBERGENOV was hired:

   a. Title 8, United States Code, Section 1324a(b) requires businesses to use an employment verification system before hiring new employees. This system requires an employer to provide attestation that it verified a prospective employee is not an unauthorized alien by using a form designated by the Attorney General or established by regulation, and that form is a United States Citizenship and Immigration Services Employee Eligibility Verification Form I-9. A prospective employee must submit documentation to establish both employment authorization and identity with the form I-9.

   b. On or about April 11, 2019, as part of the hiring process at the Victim Business, KUDAYBERGENOV, the defendant, completed an I-9 (the "I-9"). The I-9 contains, among other things, the following:

          i.   The statement: "I attest, under penalty of perjury, that I am a lawful permanent resident."

          ii.   The applicant's Alien Registration Number/USCIS Number, which is listed as a nine digit number ending in 1451 ("A-NUMBER-1").

          iii.   The applicant's Social Security Number, which is listed as a nine digit number ending in 4825 ("SSN-1").

          iv.   An electronic signature in the name "Allambergen Kudaybergenov," dated "11 Apr 2019."

       c.   KUDAYBERGENOV submitted with his employment application certain documents in support of the I-9. These documents include, among others, the following:

          i.   A Permanent Resident Card bearing the name "ALLAMBERGEN KUDAY BERGENOV" (the "Resident Card"). The KUDAYBERGENOV Resident Card bears a photograph ("Photograph-1"), and a date of birth ("DOB-1"). The KUDAYBERGENOV Resident Card also bears A-NUMBER-1.

          ii.   A Social Security Card bearing the name "ALLAMBERGEN KUDAY BERGENOV" (the "Social Security Card," and, together with the Resident Card, the "I-9 Documents"). The Social Security Card also bears SSN-1.

   7.   I have spoken with a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), who reviewed the I-9 documents. Based on those conversations, I have learned, among other things, the following:

       a.   The Resident Card has never been issued to ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant. A-NUMBER-1, which is listed on the Resident Card and is contained in the I-9, was previously issued to a female individual ("Individual-1") who is not the defendant, and does not share the defendant's name, likeness as depicted in Photograph-1, or DOB-1.

       b.   The Social Security Card has never been issued to the KUDAYBERGENOV. SSN-1, which is listed on the Social Security Card and is contained in the I-9, was previously to a female individual ("Individual-2") who is not KUDAYBERGENOV, does not share the KUDAYBERGENOV's name, likeness

4

as depicted in Photograph-1, or DOB-1. Individual-2 appears to have been deceased since 2014.

   c. In or about 2005, a student visa ("Visa-1") was issued for an individual named ALLAMBERGEN KUDAYBERGENOV. Based on my review of Visa-1, I have learned, among other things, the following:

    i. Visa-1 included a date of birth ("DOB-2") and a photograph ("Photograph-2"). I have compared Photograph-1 and Photograph-2, and, based on my training and experience and involvement in this investigation, I believe Photograph-1 and Photograph-2 depict the same person, KUDAYBERGENOV.

    ii. Visa-1 authorized the holder of Visa-1 to attend a particular college in the United States ("College-1"). Based on my conversations with representatives from College-1, I am aware that KUDAYBERGENOV left College-1 in or about 2006, prior to completing the course of study at College-1 that was authorized by Visa-1.

    iii. As of 2019, Visa-1 conferred no lawful immigration status on KUDAYBERGENOV. At no time did Visa-1 confer Permanent Resident Status on KUDAYBERGENOV.

*The Threats*

  8. Beginning in or about May 2019, the Victim Business began receiving a series of e-mails submitted through the Victim Business's website, which included, among other things, derogatory racial commentary, references to race-based violence and sexual assault, and threats to kill various employees of the Victim Business. Based on my conversations with witnesses at the Victim Business, and my review of relevant e-mails, I have learned, among other things, the following:

   a. On or about May 27, 2019, the Victim Business received an e-mail from ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant, in which he referred to another employee of the Victim Business ("Victim-1") and wrote, in part, "[Victim-1] I have zero tolerance for gay people." Later, on or about May 28, 2019, the Victim Business received an e-mail from KUDAYBERGENOV saying, in part, "O [Victim-1] my position fixable. It does not mean fix able." Managers at the Victim Business discussed the e-mails with KUDAYBERGENOV, who admitted that he had sent them.

b.  On or about June 20, 2019, the Victim Business received an e-mail from KUDAYBERGENOV, in which he referred to another employee of the Victim Business ("Victim-2") and wrote, in part, "[Victim-2] in jjew waiting for war." Managers at the Victim Business discussed the e-mail with KUDAYBERGENOV, who admitted that he had sent it.

c.  On or about July 7, 2019, KUDAYBERGENOV left work after a dispute with another employee of the Victim Business ("Victim-3") and did not return.  Thereafter, the Victim Business no longer considered KUDAYBERGENOV to be an employee of the Victim Business.

d.  Between on or about July 14, 2019 and July 28, 2019, the Victim Business received approximately 22 e-mails sent with KUDAYBERGENOV's name, including, among other things, derogatory racial comments directed at numerous employees at the Victim Business. On or about July 20, 2019, KUDAYBERGENOV sent an email in which he, in substance, threatened to kill Victim-3.

e.  On or about July 29, 2019, the Victim Business caused a cease-and-desist letter to be served on KUDAYBERGENOV (the "Desist Letter").  The Desist Letter contained, among other things, notice that the Victim Business filed a complaint against KUDAYBERGENOV with the New York City Police Department, and a demand that KUDAYBERGENOV stop sending e-mails to the Victim Business.

f.  Between on or about September 19, 2019, and December 26, 2019, the Victim Business received five e-mails from a sender listed as "Juan Carlos."  One of those e-mails, dated December 26, 2019, contained the phrase "Happy new year [Victim-1].  Soon I kill homosexual dog [Victim-3]."

g.  Between January 18, 2020 and February 6, 2020, the Victim Business received approximately 13 additional e-mails.  The e-mails were sent using various sender names, and contained references to and threats against employees of the Victim Business, including Victim-1, Victim-2, and two additional victims ("Victim-4" and "Victim-5"). For example, on or about January 26, 2020, the Victim Business received an e-mail from "Jose Morales" which included, among other things, the following statements: "I was working there in [Victim Business] as a busboy.  I work there with jews Managers named [Victim-4], [Victim-2] and others.  Jew fucking guy (manager) named [Victim-4] asked me do you speak Spanish.  I told him I wanna another

6

holocaust killing 60 million jews like a fucking [Victim-4]. [ . . . ] As long as these jews like [Victim-4], [Victim-2], and [Victim-5] are alive, they are dangerous. [Victim-1] we must kill them." Later, on or about February 3, 2020, the Victim Business received an e-mail from "Angelo Martinez" which included, among other things, the following statements: "[Victim-1] as an American you have to do something with the people sarrounding you. Especially with the white and blacks. This is not about a color issue. This is about culture. [Victim-1], [Victim Business] remains Mexican I mean Spanish ([Victim-1]) It is perfect time for Negros and Whites to kill each other."

    h. On or about February 16, 2020, the Victim Business received an e-mail from a sender listed as "Santiago Martinez." The e-mail stated, in part, "This message is to [Victim-1] [ . . . ] once upon a day I said that war started from a jew manager named [Victim-3] who created war, I will finish that war. I will put fire in all [Victim Business] restaurants in Brooklyn in Manhattan. The era of whites (jews) and negros are long gone. [ . . . ] [Victim-1] you must cease your illegal activity. Otherwise..."

    i. I have compared the e-mails sent after KUDAYBERGENOV received the Desist Letter (*see supra* ¶¶ 8(f), (g), and (h)) to the emails sent before KUDAYBERGENOV received the Desist Letter (*see supra* ¶¶8(a), (b), and (d))(collectively, the "Threats E-mails"). I observed in that comparison that the Threat E-mails contain overlapping unique features, including the nature and content of the threats, the victims referenced in the e-mails, and the spelling and language used in the-emails. Based on this comparison, and my training, experience, and involvement in this investigation, I believe that KUDAYBERGENOV wrote and transmitted all of the Threat E-mails.

    j. The Threat E-mails were transmitted through the Victim Business website. Based on my training and experience and involvement in this investigation, I am aware that the Victim Business website e-mail service forwards submitted e-mails to various e-mail hosting services, including Gmail, which, along with the Victim Business website uses internet hosting services based in various locations outside of New York State.

WHEREFORE deponent prays that a warrant issue for the arrest of ALLAMBERGEN KUDAYBERGENOV, a/k/a "Allambergen Kuday Bergenov," the defendant, be imprisoned, or bailed, as the case may be.

_____
JOHNATHAN WALTER
Special Agent
Federal Bureau of Investigation

Sworn to before me this
21st day of February 2020

_____
HONORABLE BARBARA C. MOSES
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8